## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| NELLIE LOGAN<br>751 North 36th Street<br>Philadelphia, PA 19104<br><br>       Plaintiff,<br><br><br>v.<br><br><br>PENNSYLVANIA HOSPITAL<br>800 Spruce Street<br>Philadelphia, PA 19107<br><br>       Defendant. | CIVIL ACTION NO. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

Plaintiff, Nellie Logan ("Plaintiff"), by and through her undersigned counsel, for her Complaint against Pennsylvania Hospital ("Defendant"), alleges as follows:

## INTRODUCTION

1.    Plaintiff brings this action to redress violations by Defendant of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

## PARTIES

2.    Plaintiff, Nellie Logan, is an adult American citizen who currently maintains a residence at 751 North 36th Street, Philadelphia, PA 19104.

3.     Defendant, Pennsylvania Hospital, is a hospital operating and existing under the laws of the Commonwealth of Pennsylvania, with a business address of 800 Spruce Street, Philadelphia, PA 19107.

4.     At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

5.     Paragraphs 1 through 4 are hereby incorporated by reference as though the same were more fully set forth at length herein.

6.     This action is authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

7.     On or about June 21, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, thereby satisfying the requirements of 42 U.S.C. §§ 2000e5(b) and (e). Plaintiff's EEOC Charge was docketed as EEOC Charge Number 530-2017-03009. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

8.     By correspondence dated February 1, 2018, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against the Defendant.

9.     Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

10.    This Court has original jurisdiction over Plaintiff's ADA claim, pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. This Court had pendant jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative fact as his federal claims.

12. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as Defendant resides in this district and conducts business therein, and the events giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

13. Paragraphs 1 through 12 are hereby incorporated by reference as though the same were more fully set forth at length herein.

14. Plaintiff began her employment with Defendant on or around January 4, 2017, as a contract employee. The employment contract was arranged through a third-party agency, American Mobile Nursing ("AMN").

15. Plaintiff was hired as a Surgical Technologist, assigned to work closely with neurosurgery doctors in the Operating Room ("OR") assisting with surgical procedures.

16. Plaintiff performed her job satisfactorily, receiving praise for her work and no significant discipline.

17. In or around 2009, Plaintiff was diagnosed with Multiple Sclerosis ("MS"), a condition that affects the nervous system.

18. As a result of the MS, Plaintiff suffers from slight tremors in her hands.

19. Plaintiff's treating physician, who was aware of her job title and job duties, did not suggest any work limitations as a result of her MS.

20. As such, Plaintiff did not require any workplace accommodations.

21. At no time during Plaintiff's employment with Defendant did her condition impair her ability to perform her work.

22. In fact, within three days of starting her new position, Plaintiff was asked to "take over" for another Surgical Technologist during surgery and performed all assigned tasks without issue.

23. Shortly after Plaintiff was hired, Plaintiff sought a second opinion regarding an MS complication she had prior to working for Defendant.

24. More specifically, Plaintiff asked a doctor she had been working with in the OR, Dr. William Welsh ("Dr. Welsh"), if she could "ask a personal question." Dr. Welsh responded by asking if "this was about the MS." Prior to this conversation, Plaintiff did not personally disclose to Dr. Welsh she suffered from MS. In fact, Plaintiff did not even indicate her "personal question" was related to her MS at all. Dr. Welsh merely assumed.

25. After Plaintiff's conversation with Dr. Welsh, she noticed a marked change in how she was treated in the OR.

26. Where Plaintiff was previously praised for her work, she was now met with impatience and criticism.

27. During one procedure, when Dr. Welsh caused a dural tear, Plaintiff was asked to provide him with sutures. Plaintiff began the typical process of loading the sutures in a needle, however, Dr. Welsh began to yell at her, for no apparent reason, stating he wanted the sutures without the needle, a method he had not practiced any time prior to this procedure.

28. During another procedure with Dr. Welsh, at or around the same time, Plaintiff was asked to use a bone mill. Plaintiff had not used this machine previously, so she needed a quick tutorial. After the tutorial, Plaintiff used the machine successfully during the procedure. Plaintiff did not receive any negative comments during the procedure, or directly after, for her lack of knowledge regarding the use of the bone mill.

29. In or around late January 2017, Plaintiff was called into a meeting with the Nighttime Shift Supervisor, Anita (Last Name Unknown) ("Anita LNU"), and the Perioperative Director, Francis (Last Name Unknown) ("Francis LNU"). Anita LNU and Francis LNU stated they wanted to discuss "concerns and issues" with Plaintiff.

30. In this meeting, they indicated Plaintiff dropped a suture during a procedure, which was untrue. They also indicated they were displeased with her lack of knowledge regarding the use of the bone mill. At no time before this conversation did the Defendant indicate Plaintiff needed to know how to operate the bone mill.

31. During her conversation with Anita LNU and Francis LNU, Plaintiff tried to clarify when she allegedly dropped the suture and who made the complaints against her. However, her questions were left unanswered. Anita LNU and Francis LNU would only state they "got wind of it."

32. After Plaintiff's conversation with Anita LNU and Francis LNU, her assignments began to change. Plaintiff was no longer assigned to rooms with neurology patients, despite her employment within the Neurology Department of the Hospital.

33. Plaintiff was also removed from neurology procedures in the OR. For example, as she was preparing to assist with a craniotomy, Vera (Last Name Unknown) ("Vera LNU"), a registered nurse in the Neurology Department, informed her she would be replacing Plaintiff in the procedure, but did not provide her with any additional explanation as to why Plaintiff was being replaced.

34. On or about February 16, 2017, less than two weeks after Plaintiff's conversation with Anita LNU and Francis LNU, and without any written warning or reprimand for the alleged workplace "concerns and issues," Plaintiff received a text message from a representative at AMN

stating her contract with the Hospital had been terminated and that she was not to report to work the following day. The AMN representative did not have an explanation for the canceled contract.

35.     Accordingly, Plaintiff believes and avers that the performance based reasons provided for termination were pretextual and that Defendant terminated her on account of her actual and/or perceived disabilities in violation of the ADA.

## COUNT I
### THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C § 12101, *ET SEQ.*
### DISCRIMINATION AND RETALIATION

36.     Paragraphs 1 through 35 are hereby incorporated by reference as though the same were more fully set forth at length herein.

37.     At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

38.     Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

39.     Plaintiff's MS substantially limits her ability to engage in major life activities.

40.     Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

41.     Despite her disability, Plaintiff would have been able to perform the essential functions of her job with or without a reasonable accommodation.

42.     By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process of determining reasonable accommodations for Plaintiff, and by terminating Plaintiff's employment because of her actual and/or perceived disability.

6

43.    As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.    Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting her action;

D.    Pre-judgment interest in an appropriate amount; and

E.    Such other and further relief as is just and equitable under the circumstances;

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT II**
**THE PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951, *ET SEQ.***
**DISCRIMINATION AND RETALIATION**

44.    Paragraphs 1 through 43 are hereby incorporated by reference, as though the same were more fully set forth at length herein.

45.  Plaintiff is a qualified individual with a disability within the meaning of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, due to her MS because this condition substantially limits her ability to perform major life activities.

46.  Plaintiff was/is able to perform the essential functions of her job with or without a reasonable accommodation.

47.  It is believed and therefore averred that Defendant terminated Plaintiff's employment on the basis of her actual and/or perceived disabilities.

48.  As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

49.  The conduct described above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 955, *et seq.*, and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.  Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.  Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.  Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D.      Pre-judgment interest in an appropriate amount; and

E.      Such other and further relief as is just and equitable under the circumstances;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: _____

Michael Murphy, Esq.
Murphy Law Group, LLC
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
*Attorney for Plaintiff*

Dated: April 16, 2017

9

## DEMAND TO PRESERVE EVIDENCE

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.